**UNITED STATES of America, Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, et al., Defendants.**

**In re APPLICATION XX BY THE INDEPENDENT ADMINISTRATOR.**

**No. 88 CIV. 4486 (DNE).**

United States District Court,
S.D. New York.

June 18, 1991.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. (Edward T. Ferguson, III, Asst. U.S. Atty., of counsel), New York City, for U.S.

Goulston & Storrs, Boston, Mass. (Rudolph Pierce, Dennis King, of counsel), Boston, Mass., for Intern. Broth. of Teamsters.

## OPINION AND ORDER

EDELSTEIN, District Judge:

This opinion emanates from the voluntary settlement in the action commenced by the plaintiff United States of America (the "Government") against defendants International Brotherhood of Teamsters (the "IBT") and the IBT's General Executive Board (the "GEB") embodied in the voluntary consent order entered March 14, 1989 (the "Consent Decree"). The remedial provisions in the Consent Decree provided for

three Court-appointed officials, the Independent Administrator to oversee the remedial provisions, the Investigations Officer to bring charges against corrupt IBT members, and the Election Officer to oversee the electoral process leading up to and including the 1991 election for International Officers (collectively, the "Court Officers"). The goal of the Consent Decree is to rid the IBT of the hideous influence of organized crime through the election and prosecution provisions.

Application XX presents for this Court's review the Independent Administrator's report to the Court on the Windsor Graphics matter. In Application XX, the Independent Administrator investigated the circumstances of the IBT General President McCarthy and Director of Communications F.Z. "Duke" Zeller's award of the contract to print its monthly magazine, *The International Teamster*, to Windsor Graphics, Inc. The Independent Administrator found that the expenditure of funds to Windsor Graphics would further an act of racketeering recognized under the RICO statute, 18 U.S.C. § 1961(1), the aiding and abetting the extortion of the IBT membership's rights to union democracy and self-governance under the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 411, in violation of the Hobbs Act, 18 U.S.C. § 1951. The Independent Administrator directed that the IBT rebid the contract.

The IBT has agreed to rebid *The International Teamster* printing contract in a process approved by the Independent Administrator. The only issue on appeal to this Court is the Independent Administrator's finding that McCarthy and Zeller's actions furthered an act of racketeering. Further, Zeller moved this Court to intervene in this matter.

Nonetheless, the Government argues that the decision and directives of the Independent Administrator should be affirmed in all respects, notwithstanding the IBT's willingness to rebid *The International Teamster* printing contract. The Government contends that the Independent Administrator's finding that McCarthy and

Zeller aided and abetted the extortion of the members' LMRDA rights is fully supported by the evidence and is neither arbitrary nor capricious.

Considering the deference accorded the Independent Administrator and the standard set out in ¶ F.12.(B) of the Consent Decree for a veto of funds, his findings in this matter are fully supported by the evidence. His conclusions are neither arbitrary nor capricious. Accordingly, the finding of the Independent Administrator appealed by the IBT is affirmed.

## I. The Independent Administrator's Findings

The Independent Administrator's veto was made as a result of an investigation conducted by his staff into the IBT's 1989 award of a contract to print *International Teamster* to Windsor Graphics, Inc. The Report to this Court that concluded with the veto set forth the results of that investigation (the "Report"). The relevant factual findings are summarized.

On March 1, 1989, IBT General President William McCarthy awarded the contract to print *The International Teamster* to Windsor Graphics. *The International Teamster* is the IBT monthly magazine, with a circulation of 1.8 million. Windsor Graphics is a closely held printing firm that had been recently founded by General President McCarthy's daughter and son-in-law, Thomas J. Treacy. Windsor Graphics is now owned by Mr. Treacy alone. Windsor Graphics had no printing capacity of its own, and was operated out of Treacy's home.

The contract was awarded by the following bidding process. McCarthy ordered Zeller to accept bids from only three bidders, and that Windsor Graphics be one. Good Impressions, the previous printer was not invited to bid. No bid specifications or deadlines were issued to the bidders. As a result, the bids were nonuniform in format and required subjective analysis by the IBT for comparison. After IBT analysis, the three bids (in dollars per month) as evaluated were (i) Windsor, $305,071 ("plus labels"); (ii) Affiliated Graphics, $305,573

("plus labels"); (iii) Delancy Printing, $336,400 ("plus color separations"). Further, these same bidders were asked to submit alternative proposals for their bids, but these alternatives were not considered.

The investigation revealed that while the IBT followed a competitive bidding process, secret preferential treatment was given to Windsor Graphics in its bid. Since Windsor Graphics lacked established credit, the IBT guaranteed a Boston paper supplier that it would make Windsor's payment if the paper invoice went unpaid for 30 days. The IBT made a similar guarantee to a Boston area printing concern for the printing work. These guarantees were obtained from the IBT during the bidding process, and were not extended to the other two bidders.

The IBT further agreed to advance Windsor Graphics a monthly sum of money equivalent to one months cost of paper for *The International Teamster* for Windsor to keep on account. In the period May 5, 1989 until November 2, 1989, the IBT advanced the total sum of $1,344,422 to Windsor Graphics in this paper account. The IBT kept large sums on deposit with Windsor Graphics at any given time, ranging from approximately $140,000 to approximately $247,000. The lost interest to the IBT of this interest-free loan was over $18,000 for the period of May, 1989 until August, 1991. The intangible cost of the guarantees, or the actual cost of the imputed interest were not included in the subjective consideration of the three bids. (Report at 7–14).

Based on this evidence, the Independent Administrator found the bidding process "seriously flawed" since no bid specifications were prepared, only three firms were invited to bid, the existing printer of *The International Teamster* was not considered, sealed bids were not required, and the evaluation of the bids was imprecisely performed. (Report at 19–24). The IBT gave Windsor Graphics a significant competitive advantage by agreeing to guarantee payment to Windsor Graphics' paper supplier and printer, and to advance money to Windsor Graphics to pay its paper sup-

plier. The IBT did not take into account the value of these guarantees, and the lost interest cost of keeping hundreds of thousands of dollars on account with Windsor Graphics.

After considering all of these facts and circumstances, the Independent Administrator found that McCarthy and Zeller engineered the award of *The International Teamster* printing contract to Windsor Graphics "by secretly conferring advantages and benefits upon Windsor that enabled it to present what, on its face, was the lowest of three bids, but was in actuality anything but that." (Report at 34).

As a result of this investigation, the Independent Administrator acted appropriately by exercising his authority pursuant to ¶ F.12.(B)(i) of the Consent Decree to veto IBT expenditures to Windsor Graphics. He may do so "whenever the Administrator reasonably believes" that such expenditures "constitute[ ] or further[ ] an act of racketeering activity" as defined in 18 U.S.C. § 1961(1). In this instance, the Independent Administrator vetoed the IBT's further expenditure of additional funds to pay Windsor to print *The International Teamster*, since he found that the improprieties in the bidding process amounted to the furtherance of the act of racketeering of aiding and abetting the extortion of the IBT membership's right to union democracy and self governance under the LMRDA. In addition, the Independent Administrator found that Zeller's "deliberate effort to conceal the truth" in his deposition testimony about this matter furthered this extortion.

## II. Standard of Review

Paragraph K.16 of the Consent Decree provides that this Court shall review the actions of the Independent Administrator using "the same standard applicable to review of final federal agency action under the Administrative Procedures Act." Consent Decree at 25. The decisions of the Independent Administrator are "entitled to great deference." *United States v. International Brotherhood of Teamsters*, 905 F.2d 610, 616 (2d Cir.1990), *aff'g* March 13,

1990 Opinion & Order, 743 F.Supp. 155 (S.D.N.Y.1990).

In order to exercise his veto pursuant to ¶ F.12.(B) of the Consent Decree, the Independent Administrator must "reasonably believe" that the action would further an act of racketeering or contribute to the association of the IBT with organized crime. April 18, 1991 Opinion, *supra*, 761 F.Supp. 315 (S.D.N.Y.1991). The decision by the Independent Administrator to exercise his veto is given the same deference that this Court and the Court of Appeals must give determinations of the Independent Administrator.

### III. Discussion

The IBT appeals the Independent Administrator's finding that McCarthy and Zeller's actions aided and abetted the extortion of the membership's LMRDA rights. Further, Zeller moves this Court to intervene.

#### A. Intervention

██ Zeller moves this Court to intervene in this matter pursuant to Fed.R.Civ.Pro. 24. Essentially, Zeller moves to intervene in order to rebut factual findings made regarding Zeller in the Report of the Independent Administrator which damage his reputation. Zeller's concern neither implicates any federal statute, *see* Fed.R.Civ. Pro. 24(a)(1), nor has he demonstrated that he has "an interest relating to the property or transaction which is the subject of [this] action." Fed.R.Civ.Pro. 24(a)(2). The Independent Administrator's exercise of his veto power under the Consent Decree is a matter solely within the purview of the IBT. *See* April 18, 1991 Opinion & Order, 761 F.Supp. 315 (S.D.N.Y.1991).

Accordingly, this motion to intervene is denied.

#### B. The IBT's Challenges

The IBT objects to the finding that McCarthy and Zeller breached their fiduciary duties, thereby aiding and abetting the extortion of the members' LMRDA rights. The IBT asserts (i) that as General President, McCarthy is under no IBT constitu-

tional obligation to award the printing contract by competitive bidding, and (ii) McCarthy's award of the contract to Windsor Graphics saved the IBT a "substantial" amount over the previous firm that printed *The International Teamster*. (Report at 35). Thus, the IBT contends that the Independent Administrator's conclusions are unreasonable: since McCarthy saved the IBT a "substantial" amount of money, he did not breach his fiduciary duty to the membership. Further, the IBT argues that at the least, such savings could hardly amount to aiding and abetting the extortion of the members' LMRDA rights.

The Government addresses all of IBT's objections to the Report of the Independent Administrator and contends that they are without merit and should be rejected. This Court agrees.

██ The IBT rank and file's rights to democracy and self-governance under the LMRDA, 29 U.S.C. § 411(a), are extortable property under the Hobbs Act, 18 U.S.C. § 1951, and the extortion of those rights may constitute an act of racketeering under the RICO statute, 18 U.S.C. § 1961(1). April 18, 1991 Opinion, *supra*, 761 F.Supp. at 317; March 6, 1989 Opinion & Order. 708 F.Supp. 1388, 1399 (S.D.N.Y.1989); *see United States v. Local 560*, 780 F.2d 267, 281–82 (3d Cir.1985). The aiding and abetting of the extortion of the members' rights under the LMRDA can constitute an act of racketeering. April 18, 1991 Opinion, *supra*, 761 F.Supp. at 317; March 6, 1989 Opinion, *supra*, 708 F.Supp. at 1399.

██ A decision by the Independent Administrator to exercise his veto power because of an action of the IBT that furthers the loss of the members' LMRDA rights must be considered in light of the fact that the membership's LMRDA rights that have been taken away through decades of institutionalized corruption. The explicit purpose of the Consent Decree was to eliminate corrupt IBT practices. To that end, the Consent Decree contains express admissions of allegations of wrongdoing and corruption in the IBT. Consent Decree at 2.

The facts fully support the Independent Administrator's finding that the members' LMRDA rights were extorted by awarding the printing contract to Windsor Graphics. The IBT General President was expending funds to Windsor Graphics by printing *The International Teamster* with his son-in-law's printing firm, a firm without its own equipment, credit, contacts or track record of competence and efficiency as a concern which was awarded the contract after a rigged scheme. Payments continued monthly after the signing and implementation of the Consent Decree that was intended to end such blatant corruption. The IBT General President had engineered an obviously self-dealing scheme. The Independent Administrator noted that such nepotistic practices were commonplace in the IBT, stating "[r]regrettably, pervasive nepotism is to be found at every level of the IBT and its affiliates." (Report at 16). It was in this unfortunate context of pervasive corruption that the Independent Administrator found that this obvious ripoff of IBT funds only furthered the longstanding denial of the membership's LMRDA rights through extortionate acts of their leadership. (Report at 34).

The actions of McCarthy and Zeller aided and abetted this extortion of the members' LMRDA rights. The Independent Administrator found that McCarthy and Zeller aided and abetted this extortion of the membership's rights by violating their fiduciary duty to use the IBT's money for the sole benefit of the membership. 29 U.S.C. § 501(a). This fiduciary duty is heightened for a union official, especially when the union official is the General President or Communications Director of the nation's largest labor union. *See* April 18, 1991 Opinion, *supra,* 761 F.Supp. at 320. For the IBT to argue that the General President should be free to award a lucrative contract to his son-in-law by means of a rigged bidding process because there is no specific IBT constitutional provision requiring that he act otherwise is absurd.

The IBT argues that McCarthy's awarding of *The International Teamster* printing contract to his son-in-law's firm saved the IBT a significant amount over the prior printing contract and was thus not violative of his fiduciary duty to the membership. This is sheer sophistry. The IBT argument that because prior General Presidents had awarded the printing contracts in the past in even more corrupt ways does not sanitize McCarthy's misconduct.

Whether McCarthy and Zeller breached their fiduciary duties to the membership is to be weighed by whether the IBT could have saved money by awarding the printing contract to a firm with established capabilities. To ask the question is to answer it.

In consequence, the Independent Administrator found that the behavior of McCarthy and Zeller, in light of all the relevant circumstances of their conduct, aided and abetted the extortion of the members LMRDA rights. Their actions were not in the best interests of the membership or the public. The record made by the Independent Administrator is sufficient to "reasonably believe" that the awarding of the printing contract to Windsor Graphics furthered an act of racketeering. The IBT has not demonstrated that conclusion was arbitrary or capricious. Accordingly, the finding of the Independent Administrator is affirmed.

## IV. Conclusion

For the reasons discussed, the conclusion of the Independent Administrator that he reasonably believed that the awarding of the printing contract for *The International Teamster* to Windsor Graphics, Inc. furthered an act of racketeering is affirmed.

So Ordered.